FILED
MAY 29 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**SPECIAL LIMITED POWER OF ATTORNEY**

The Undersigned, one natural man known as Principal, Martin Grunin, being an Inhabitant on the Land in the original jurisdiction of the state of California the republic, does hereby designate Brian-Robert: Costello, public Minister/Diplomat, as Attorney-in-fact for the Principal, to act in the following capacity in behalf of the Principal.

1. The Attorney-in-fact shall have limited power to sign the Principal's name to various documents as if the Principal himself were signing said documents upon which the Attorney-in-fact shall have authority to sign the principal's name, are limited in scope to the documents created by the Attorney-in-fact which are necessary to complete the agreed upon process(s), which may include Affidavits, Torts, Liens, (to retrieve) process. Private Agreement, of any/all commercial documents to officials in regards to this process when applicable. This limited power of attorney also includes dealing with courts and prison officials, the U.S. Treasury, Internal Revenue Service and/or any other government or corporate agency in behalf of the Principal.
2. This special limited power of attorney shall become effective immediately and shall remain in effect for a period of one year, or until the documents are prepared, whichever occurs first, or until revoked or terminated as specified in paragraph 3 or extended as specified in paragraph 4.
3. This power of attorney may be revoked, suspended or terminated in writing by principal with written notice to the designated attorney-in-fact.
4. This power of attorney may be extended as necessary by written authorization of Principal with written notice to the Attorney-in-fact.
5. The designated and acting Attorney-in-fact and all persons dealing with Attorney-in-fact shall be entitled to reply upon this power of attorney so long as neither the Attorney-in-fact nor any person with whom he was dealing at the time of any act taken pursuant to this power of attorney, had received actual knowledge or actual notice of any revocation, suspension, or termination of power of attorney by death or otherwise.
6. The estate of principal shall hold harmless and indemnify the Attorney-in-fact from all liability for acts done in good faith and not in fraud of the Principal.
7. The laws of the state of California shall govern this power of attorney.

This power of attorney is signed on this Tues day of May 27, 2014, and to become effective as provided in paragraph 2.

Signature: [signature]
Principle: Martin Grunin
Located at: New York

at City of Brooklyn )
) ss:
at State of NY )

Subscribed and sworn to (or affirmed) before me on this 27 day of May, 2014, by Martin Grunin, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

[signature]

Notary Public

JERALD REINGOLD
Notary Public State of New York
No. 01RE6065047
Qualified in Kings County
Expires on 12/16/14

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL™

7013 1710 0000 1906 0118

U.S. Postal Service™

CERTIFIED MAIL™ RECEIPT

(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To: Phillip Burton Federal Clerk Court

Street, Apt. No.; or PO Box No.: Copyright, and do not consent

City, State, ZIP+4: Martin Gruvian

PS Form 3800, August 2006

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL™

7013 1710 0000 1974 1697

U.S. Postal Service™

CERTIFIED MAIL™ RECEIPT

(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

Sent To: Perkins Coie LLP

Street, Apt. No.; or PO Box No.: Copyright, and do not consent

City, State, ZIP+4: Martin Gruvian

Case3:14-cv-02323-WHA Document8 Filed05/29/14 Page3 of 32

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

FACEBOOK, INC., a Delaware Corporation,

*Plaintiff(s)*

v.

MARTIN GRUNIN, an individual,

*Defendant(s)*

Civil Action No. 3:14-cv-02323 MEJ

I DO NOT ACCEPT THIS OFFER TO CONTRACT and I DO NOT CONSENT TO THESE PROCEEDINGS.

BY: Burn Robert: Costello Public Minister / Diplomat united states of America For: Martin Grunin without prejudice UCC 1-308 Dated May 27, 2014

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Martin Grunin
1325 Oriental Boulevard
Brooklyn, NY 11235-3037

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Judith Jennison
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000; JJennison@perkinscoie.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*
*Richard W. Wieking*

Date: 05/20/2014

*Signature of Clerk or Deputy Clerk*

I DO NOT ACCEPT THIS OFFER TO CONTRACT and I DO NOT CONSENT TO THESE PROCEEDINGS

By: Brian Robert: Estate Public Minister / Diplomat united states of America For: Martin Cronin Without prejudice, UCC 1-308 Dated May 27, 2014

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Plaintiff(s)

Defendant(s).

Case No. C

CONSENT OR DECLINATION TO MAGISTRATE JUDGE JURISDICTION

**INSTRUCTIONS:** Please indicate below by checking **one** of the two boxes whether you (if you are the party) or the party you represent (if you are an attorney in the case) choose(s) to consent or decline magistrate judge jurisdiction in this matter. Sign this form below your selection.

☐ **Consent to Magistrate Judge Jurisdiction**

In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily **consent** to have a United States magistrate judge conduct all further proceedings in this case, including trial and entry of final judgment. I understand that appeal from the judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit.

**OR**

☐ **Decline Magistrate Judge Jurisdiction**

In accordance with the provisions of 28 U.S.C. § 636(c), I **decline** to have a United States magistrate judge conduct all further proceedings in this case and I hereby request that this case be reassigned to a United States district judge.

DATE: ____________ NAME: ____________

COUNSEL FOR (OR "PRO SE"): ____________

____________

*Signature*

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FACEBOOK, INC.,
Plaintiff(s),
v.
MARTIN GRANIN,
Defendant(s).

No. C 14-02323 MEJ

**ORDER SETTING INITIAL CASE MANAGEMENT CONFERENCE AND ADR DEADLINES**

I DO NOT ACCEPT THIS OFFER TO CONTRACT and I DO NOT CONSENT TO THESE PROCEEDINGS

without prejudice. UCC 1-308

Dated May 27, 2014

IT IS HEREBY ORDERED that this action is assigned to the Honorable Maria-Elena James. When serving the complaint or notice of removal, the plaintiff or removing defendant must serve on all other parties a copy of this order , the Notice of Assignment of Case to a United States Magistrate Judge for Trial, and all other documents specified in Civil Local Rule 4-2. Counsel must comply with the case schedule listed below unless the Court otherwise orders.

IT IS FURTHER ORDERED that this action is assigned to the Alternative Dispute Resolution (ADR) Multi-Option Program governed by ADR Local Rule 3. Counsel and clients shall familiarize themselves with that rule and with the material entitled "Dispute Resolution Procedures in the Northern District of California" on the Court ADR Internet site at cand.uscourts.gov/adr. A limited number of printed copies are available from the Clerk's Office for parties in cases not subject to the court's Electronic Case Filing program (ECF).

IT IS FURTHER ORDERED that plaintiff or removing defendant serve upon all parties the brochure entitled "Consenting To A Magistrate Judge's Jurisdiction In The Northern District Of California," additional copies of which can be downloaded from the following Internet site: http://www.cand.uscourts.gov.

**CASE SCHEDULE -ADR MULTI-OPTION PROGRAM**

| Date | Event | Governing Rule |
|---|---|---|
| 5/20/2014 | Complaint filed | |
| 7/31/2014 | *Last day to: • meet and confer re: initial disclosures, early settlement, ADR process selection, and discovery plan | FRCivP 26(f) & ADR L.R.3-5 |
| | • file ADR Certification signed by Parties and Counsel (form available at cand.uscourts.gov) | Civil L.R. 16-8 (b) & ADR L.R. 3-5(b) |
| | • file either Stipulation to ADR Process or Notice of Need for ADR Phone Conference (form available at cand.uscourts.gov) | Civil L.R. 16-8 (c) & ADR L.R. 3-5(b) & (c) |
| 8/14/2014 | Last day to file Rule 26(f) Report, complete initial | FRCivP 26(a) (1) |

| | | |
|---|---|---|
| | disclosures or state objection in Rule 26(f) Report and file Case Management Statement per attached Standing Order re Contents of Joint Case Management Statement (also available at cand.uscourts.gov) | Civil L.R. 16-9 |
| 8/21/2014 | INITIAL CASE MANAGEMENT CONFERENCE (CMC) in Ctrm. B, 15th Floor, SF at 10:00 AM | Civil L.R. 16-10 |

*If the Initial Case Management Conference is continued, the other deadlines are continued accordingly.

JS 44 (Rev. 12/12) cand rev (1/15/13)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
FACEBOOK, INC.

**DEFENDANTS**
MARTIN GRUNIN

(b) County of Residence of First Listed Plaintiff SAN MATEO
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant KINGS
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Judith Jennison, Perkins Coie LLP
1201 Third Avenue, Suite 4900, Seattle, WA 98101-3099
206-359-8000

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

**CONTRACT:** ☐ 110 Insurance; ☐ 120 Marine; ☐ 130 Miller Act; ☐ 140 Negotiable Instrument; ☐ 150 Recovery of Overpayment & Enforcement of Judgment; ☐ 151 Medicare Act; ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans); ☐ 153 Recovery of Overpayment of Veteran's Benefits; ☐ 160 Stockholders' Suits; ☐ 190 Other Contract; ☐ 195 Contract Product Liability; ☐ 196 Franchise

**REAL PROPERTY:** ☐ 210 Land Condemnation; ☐ 220 Foreclosure; ☐ 230 Rent Lease & Ejectment; ☐ 240 Torts to Land; ☐ 245 Tort Product Liability; ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY:** ☐ 310 Airplane; ☐ 315 Airplane Product Liability; ☐ 320 Assault, Libel & Slander; ☐ 330 Federal Employers' Liability; ☐ 340 Marine; ☐ 345 Marine Product Liability; ☐ 350 Motor Vehicle; ☐ 355 Motor Vehicle Product Liability; ☐ 360 Other Personal Injury; ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY:** ☐ 365 Personal Injury - Product Liability; ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability; ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY:** ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS:** ☐ 440 Other Civil Rights; ☐ 441 Voting; ☐ 442 Employment; ☐ 443 Housing/ Accommodations; ☐ 445 Amer. w/Disabilities - Employment; ☐ 446 Amer. w/Disabilities - Other; ☐ 448 Education

**PRISONER PETITIONS:** Habeas Corpus: ☐ 463 Alien Detainee; ☐ 510 Motions to Vacate Sentence; ☐ 530 General; ☐ 535 Death Penalty; Other: ☐ 540 Mandamus & Other; ☐ 550 Civil Rights; ☐ 555 Prison Condition; ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY:** ☐ 625 Drug Related Seizure of Property 21 USC 881; ☐ 690 Other

**LABOR:** ☐ 710 Fair Labor Standards Act; ☐ 720 Labor/Management Relations; ☐ 740 Railway Labor Act; ☐ 751 Family and Medical Leave Act; ☐ 790 Other Labor Litigation; ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION:** ☐ 462 Naturalization Application; ☐ 465 Other Immigration Actions

**BANKRUPTCY:** ☐ 422 Appeal 28 USC 158; ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS:** ☐ 820 Copyrights; ☐ 830 Patent; ☐ 840 Trademark

**SOCIAL SECURITY:** ☐ 861 HIA (1395ff); ☐ 862 Black Lung (923); ☐ 863 DIWC/DIWW (405(g)); ☐ 864 SSID Title XVI; ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS:** ☐ 870 Taxes (U.S. Plaintiff or Defendant); ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES:** ☐ 375 False Claims Act; ☐ 400 State Reapportionment; ☐ 410 Antitrust; ☐ 430 Banks and Banking; ☐ 450 Commerce; ☐ 460 Deportation; ☐ 470 Racketeer Influenced and Corrupt Organizations; ☐ 480 Consumer Credit; ☐ 490 Cable/Sat TV; ☐ 850 Securities/Commodities/ Exchange; ☒ 890 Other Statutory Actions; ☐ 891 Agricultural Acts; ☐ 893 Environmental Matters; ☐ 895 Freedom of Information Act; ☐ 896 Arbitration; ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision; ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 18 U.S.C. § 1030
Brief description of cause: Computer Fraud and Abuse Act: unauthorized access of a protected computer

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. **DEMAND $** CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):* JUDGE DOCKET NUMBER

DATE 05/20/2014 SIGNATURE OF ATTORNEY OF RECORD s/Judith B. Jennison

**IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)**
(Place an "X" in One Box Only) ☑ SAN FRANCISCO/OAKLAND ☐ SAN JOSE ☐ EUREKA

[Handwritten across page:] I DO NOT ACCEPT THIS OFFER TO CONTRACT and I DO NOT CONSENT TO THESE PROCEEDINGS
By: Martin Grunin, Public Minister, United States of America
For: Martin Grunin, without prejudice UCC 1-308, Dated May 2014

Case3:14-cv-02323-WHA Document18 Filed05/29/14 Page8 of 32

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V. Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Case3:14-cv-02323-WHA Document8 Filed05/29/14 Page9 of 32

Judith B. Jennison, Bar No. 165929
JJennison@perkinscoie.com
Joseph P. Cutler, WSBA No. 37234
*(pro hac vice to follow)*
JCutler@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

Attorneys for Plaintiff
Facebook, Inc.

I DO NOT ACCEPT THIS OFFER TO CONTRACT and I DO NOT CONSENT TO THESE PROCEEDINGS

By: Brian-Robert: Costello Public Minister/Diplomat united states of America FOR: Martin Grunin without prejudice. UCC1-308 Dated May 26. 2014

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FACEBOOK, INC., a Delaware corporation;<br>Plaintiff,<br>v.<br>MARTIN GRUNIN, an individual;<br>Defendant. | Case No.<br>**COMPLAINT FOR:**<br>**1) BREACH OF CONTRACT**<br>**2) VIOLATION OF 18 U.S.C. § 1030**<br>**3) VIOLATION OF CALIFORNIA PENAL CODE § 502(c); and**<br>**4) FRAUD**<br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. Defendant Martin Grunin is a serial offender who has repeatedly violated Facebook's terms and applicable law. His unlawful activities include defrauding Facebook, accessing Facebook without authorization, selling access to Facebook advertising accounts without authorization, and tricking Facebook users into visiting commercial websites so that he could earn referral fees.

2. Facebook brings this action to stop Grunin's abuse of Facebook and to recover damages, Grunin's unlawful profits, costs and attorneys' fees, and other available relief.

## II. PARTIES

3. Plaintiff Facebook, Inc. ("Facebook") is a Delaware corporation with its principal place of business in Menlo Park, California.

4. Defendant Martin Grunin is a resident of New York.

## III. JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Facebook alleges that Grunin violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. This Court has supplemental jurisdiction over Facebook's state law claims under 28 U.S.C. § 1367.

6. In addition or alternatively, this Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Grunin because he has consented to jurisdiction here. Facebook's Statement of Rights and Responsibilities ("SRR")—to which Grunin agreed when he joined Facebook, accessed Facebook's websites and services, and advertised on Facebook—provides that claims between the parties shall be resolved exclusively in this District.

8. In addition or alternatively, this Court has personal jurisdiction over Grunin because his unlawful activities are targeted at Facebook, which is headquartered in California;

because Grunin has conducted and still conducts substantial, continuous, and systematic business within this district; because Grunin engaged in acts outside of this district that he knew would cause injury within this district; and because the claims alleged in this Complaint arise out of or are related to Grunin's forum-related activities.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because Grunin agreed to comply with Facebook's SRR, which provides that claims shall be resolved exclusively in this District.

## IV. INTRADISTRICT ASSIGNMENT

10. Assignment to this Court's San Francisco Division is appropriate under Civil L.R. 3-2 because Facebook's principal place of business is in San Mateo County.

## V. FACTS

### A. Facebook's Social Network

11. Facebook offers an online service that enables people to connect and share. The company's service facilitates the sharing of information through the social graph—a digital mapping of people's real-world social connections. As of the filing of this Complaint, more than one billion people use Facebook each month.

12. To use Facebook, a person must sign up, provide his or her name, provide a valid email address or a verified mobile telephone number, and agree to the terms of use in Facebook's SRR.

### B. Advertising on Facebook

13. Facebook generates a portion of its revenue by selling ads that it displays to users when they use Facebook's websites or mobile applications.

14. Facebook sells ad space to individuals and organizations. Advertisers design their ads, select a destination page (where users are directed after clicking the ad), select from various targeting options (e.g., location, age, interests, education), and then complete their ad campaigns by specifying a budget, bid type (e.g., cost per click or cost per impression), and bid amount. Advertisers typically purchase ads directly through Facebook's online tool, and they may also interact with Facebook sales representatives from time to time for assistance with their accounts.

15. To standardize and protect the Facebook experience for users, all ads must comply with Facebook's Advertising Guidelines, which impose limits on format and content. For example, the Advertising Guidelines prohibit false, misleading, fraudulent, or deceptive claims or content. The Advertising Guidelines specify (among other things) that ads for adult friend finders or dating sites with a sexual emphasis are not permitted; that ads may not facilitate or promote illegal activity; and that ads may not contain adult content or activities that are overly suggestive or sexually provocative. The Advertising Guidelines also state that products and services promoted in the ad copy must be clearly represented on the destination page and that the destination site may not offer or link to any prohibited product or service.

16. Facebook's SRR incorporates by reference Facebook's Advertising Guidelines. Advertisers also agree to the Advertising Guidelines when they create Facebook ads.

17. To place ads on Facebook, advertisers must open an advertising account. Advertisers use advertising accounts to manage their campaigns and budgets and to track their campaigns' performance. Facebook permits advertisers to create multiple advertising accounts.

18. Advertising accounts typically have a spend limit (similar to a monthly limit for credit cards), which is the maximum amount Facebook allows an advertiser to spend on ads over a certain time period. If the advertiser makes payments on time, Facebook may incrementally increase the spend limit. The spend limit can also be increased with Facebook's approval. Facebook bills certain types of advertisers once per day. Facebook settles other accounts by invoicing the advertiser on a monthly or periodic basis.

## C. Grunin's Unlawful Activities

19. Grunin agreed to Facebook's SRR when he created a Facebook account or accessed Facebook's websites and services. A true and correct copy of Facebook's current SRR and historical versions of the SRR are incorporated here by reference and attached as **Exhibit A.** The SRR contains provisions applicable to advertisers and also incorporates Facebook's Advertising Guidelines.

20. At all times relevant to this Complaint, Grunin was a registered Facebook user and bound by Facebook's SRR and Advertising Guidelines.

Case3:14-cv-02323-MEJ Document1 Filed05/20/14 Page5 of 15

21. Beginning in early 2011, Grunin placed ads or caused ads to be placed on Facebook that contained sexually provocative content. These ads purported to offer casual dating services and included a picture of a woman with a sexually explicit and profane caption, in violation of Facebook's Advertising Guidelines.

22. Upon information and belief, when users clicked on the ads they were redirected to third-party websites that paid Grunin—either directly or as an "affiliate" of a marketing company—for referring people to the websites.

23. Facebook took technical measures to block Grunin's access, including disabling Grunin's personal account and advertising accounts on or about February 22, 2011, for violating Facebook's SRR and Advertising Guidelines (collectively, "Terms").

24. Grunin then circumvented Facebook's technical measures, created or obtained new accounts and resumed placing Facebook ads in violation of Facebook's SRR, which at all relevant times prohibited creating additional accounts if Facebook had disabled the user's account.

**D. Facebook Sends Grunin a Cease-and-Desist Letter**

25. On or about March 9, 2011, Facebook sent Grunin a cease-and-desist letter demanding that he and anyone working with him immediately stop accessing Facebook. Facebook also notified Grunin that his authorization to access Facebook had been revoked and that any further access to, or activity on, Facebook's websites or use of Facebook's services would be without authorization.

26. On March 11, 2011, Grunin confirmed receipt of the demand and responded with two words: "I comply." Grunin did not comply but continued to create personal and advertising accounts in violation of Facebook's Terms.

**E. Grunin Obtains and Traffics Facebook Advertising Accounts**

27. In addition to using Facebook to run noncompliant and deceptive ads, starting as early as February 2012, Grunin began using unauthorized means to obtain and sell access to Facebook advertising accounts that were unaffiliated with him and that had large spend limits. At all relevant times, Facebook's Terms forbade users from transferring either personal or

advertising accounts to third parties and from creating a new account if the user's prior account had been disabled.

28. On information and belief, under the username mGrunin, Grunin used affiliate-marketing forums to find buyers for Facebook advertising accounts for which he procured access through unauthorized means. For example, one post by mGrunin on such a forum stated the following:

> **Title: Selling a $30,000 Daily Limit Facebook Account**
> **Date:** 2/29/12 4:03 PM
> **Post:** The account is 1 year old. Has been actively promoted on for a year. Comes with a 2k Animal Charity Fan Page. Never received a warning email for this account. Payment will be either by Escrow or Direct Wire Transfer. I will keep the offer for this account open for a week and sell it to the best offer. The minimum offer I'll accept for it is $30,000. Reason for Selling: I have half a dozen high limit FB accounts that are sufficient enough for my FB campaigns. I've also been allocating my budget from FB to other mediums, so I'll be letting go off (sic) several accounts. During this account's life, I was throwing my cleaner/smaller campaigns on it.

29. Grunin updated his buyers on his inventory, posting both when he had accounts for sale and when those accounts had been sold:

> **Title: mGrunin's Facebook Accounts For Sale (Part II)**
> **Date:** 10/5/12 2:04 PM
> **Post:** Once again I should have a steady supply of Facebook Advertisement accounts. Below are the accounts I currently have available. If you need a limit above $10,000, let me know and I will have one created and sold to you for face value. Here is what I have: (2) $5,000 Daily Limit Account: $7,000/account (2) $10,000 Daily Limit Accounts: $12,500/account. None of the accounts I sell are linked to each other. None of these accounts were generated from an agency account or the agency account method. None of these account have a rep assigned to them to look them over. All of these accounts are fresh with no warnings. All of these accounts are US with Eastern Time Zone.
>
> **Title: mGrunin's Facebook Accounts For Sale (Part II)**
> **Date:** 10/10/12 8:49 PM
> **Post:** We have sold all accounts. Please PM me if you need a custom order placed.

30. Upon information and belief, Grunin sold access to Facebook advertising accounts—which he obtained through fraudulent and other unlawful means—to individuals who could not otherwise obtain a Facebook advertising account because they had been previously banned by Facebook, did not have adequate credit, or did not intend to pay Facebook for the ads.

**F. Grunin Impersonates Legitimate Companies to Obtain Advertising Access**

31. On or about November 8, 2012, an individual using the alias "Kayla Stewart" began contacting members of Facebook's sales team, posing as an employee of legitimate

companies looking to advertise.

32. "Kayla Stewart" claimed to work for a company called Marketing Drive that owned an advertising company called Thinkmodo. Marketing Drive and Thinkmodo are real entities, but Facebook's subsequent investigation revealed that "Stewart" did not work for either.

33. "Stewart" asked Facebook to create new advertising accounts for Thinkmodo with high spend limits and to apply Marketing Drive's credit line to the Thinkmodo campaigns. Grunin's scheme was to fraudulently procure advertising accounts that would allow him (or his customers) to charge ads run from the fraudulently created "Thinkmodo" accounts to the legitimate Marketing Drive account. Because Marketing Drive was billed monthly, Grunin was able to run a large number of ads without paying for them before Marketing Drive or Facebook discovered the fraud.

34. "Stewart" used the fake domain <thinksmodo.com> instead of the real domain <thinkmodo.com> to email Facebook in an effort to conceal the scheme and trick Facebook into believing that the emails were from the actual Thinkmodo entity owned by Marketing Drive.

35. Eventually, in the course of reviewing the Thinkmodo accounts, Facebook asked "Stewart" to present information to verify that she represented Thinkmodo. "Stewart" was unable to do so.

36. Upon information and belief, Grunin sent the emails that were purportedly from "Kayla Stewart."

37. However, by the time Facebook discovered the fraud, Grunin had used the "Thinkmodo" accounts to run approximately $40,000 worth of deceptive ads, including misleading ads that appeared to be endorsed by celebrities Jennifer Lopez and Dr. Oz.

38. Facebook has not been paid for the ads it served for the unauthorized "Thinkmodo" accounts.

39. On or about February 21, 2013, an individual using the alias "Colan Neilson" contacted a Facebook sales representative by email and claimed that "Neilson's" employer, Imprezzio Marketing, was expanding into the Canadian market and needed ten new advertising accounts and a line of credit.

40. Upon information and belief, Grunin sent the email that was purportedly from "Colan Neilson."

41. On or about March 7, 2013, Facebook began receiving emails from "Felix Ward," the purported President of Imprezzio Marketing. Facebook's sales representative requested that "Ward" have one of his U.S. colleagues contact Facebook.

42. Upon information and belief, Grunin sent the emails that were purportedly from "Felix Ward."

43. Soon thereafter, the same Facebook representative received an email purportedly originating from "Joy Hawkins," the Search Engine Optimization Director of Imprezzio Marketing, using a joy@imprezziomarketing.com email address. The email stated: "Felix requested that I send this email to you. He will contact you in the next 15 minutes."

44. Upon information and belief, the real Joy Hawkins did not send this email to Facebook. Instead, Grunin either hijacked Hawkins's email account to send the email or "spoofed" the "from" line of his email to make it appear that it was from Hawkins.

45. When Facebook requested supporting documentation to establish the credit, Grunin sent falsified bank statements that purported to show Imprezzio Marketing's finances.

46. Relying on "Ward's" and "Neilson's" representations, the email from "Joy Hawkins," and the bank statements, Facebook provided accounts and a credit line billed to Imprezzio Marketing. Grunin then used the account to run at least $300,000 worth of ads that violated Facebook's Terms.

47. When Facebook contacted Imprezzio Marketing about the ads and charges, Imprezzio Marketing's representatives denied that the new accounts belonged to them and stated that no one named "Felix Ward" worked at Imprezzio Marketing and that the bank statements were falsified.

48. To date, Facebook has not been paid for the ads it served for the unauthorized "Imprezzio Marketing" accounts.

**G.    Facebook Sends Grunin a Second Cease-and-Desist Letter**

49.    On or about April 26, 2013, Facebook sent Grunin a cease-and-desist letter reiterating its demands that he cease his activities.

50.    On or about April 29, 2013, Facebook hand delivered a copy of the letter to Grunin's father, Gennady Grunin, with whom Grunin is believed to reside.

51.    On or about that same day, Facebook took additional technical measures to block Grunin's access to Facebook by disabling Grunin's known personal and advertising accounts.

52.    Despite multiple attempts to contact him, Grunin has not responded to Facebook.

**H.    Harm to Facebook**

53.    Facebook has not been paid for at least $340,000 worth of ads purchased by or for Grunin on accounts unlawfully created or acquired by Grunin.

54.    Grunin's unlawful marketing activity has tainted the Facebook experience for Facebook users and advertisers.

55.    As a direct and proximate cause of Grunin's deceptive advertising and fraudulent advertising accounts, Facebook has suffered and continues to suffer harm to its reputation and goodwill.

56.    Facebook has incurred damages attributable to the effort and resources used to identify, investigate, and remove Grunin's accounts and deceptive ads and attempt to stop Grunin's injurious activities. Each time Facebook implemented technical measures to disable one of his accounts, Grunin would, in an effort to avoid detection and circumvent Facebook's technical measures, adjust his behavior before creating, obtaining, or using new accounts and resuming his placement of noncompliant Facebook ads. Since 2011, Facebook has disabled at least 70 accounts linked to Grunin—many of which were registered using false information or false pretenses—for violations of Facebook's Terms.

57.    Grunin has been unjustly enriched by his activities at the expense of Facebook.

## VI. CLAIMS FOR RELIEF

### <u>FIRST CAUSE OF ACTION</u>
### BREACH OF CONTRACT

58. Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

59. Access to and use of Facebook's websites and services is governed by and subject to Facebook's Terms.

60. Grunin accepted and agreed to Facebook's Terms, which were binding on him at all times relevant to this Complaint.

61. Facebook has performed all conditions, covenants, and promises required of it in accordance with Facebook's Terms.

62. Grunin, through his actions described above, knowingly, willfully, repeatedly, and systematically breached and likely continues to breach Facebook's Terms.

63. Grunin breached Facebook's Terms by, among other things, running deceptive ads, transferring accounts without Facebook's permission, providing false information to Facebook, continuing to access Facebook after revocation, and failing to pay for advertisements.

64. Grunin's breaches directly and proximately caused and continue to cause irreparable and incalculable harm and injury to Facebook.

### <u>SECOND CAUSE OF ACTION</u>
### COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

65. Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

66. Facebook's computers are protected computers under 18 U.S.C. § 1030(e)(2) because they are used in and affect interstate and foreign commerce and communication.

67. Grunin accessed Facebook's protected computers without authorization and thereby obtained information from Facebook's protected computers in violation of 18 U.S.C. § 1030(a)(2). After Facebook expressly revoked Grunin's permission to access Facebook's protected computers, and disabled his Facebook accounts, Grunin created and transferred multiple new Facebook and advertising accounts and continued to run deceptive ads on Facebook.

68. Grunin knowingly, and with intent to defraud, accessed Facebook without authorization and, by means of such conduct, furthered his intended fraud in violation of 18 U.S.C. § 1030(a)(4) by impersonating agents of legitimate companies to obtain credit to run deceptive ads. Through his unauthorized access, Grunin obtained things of value, including credit and, on information and belief, payment for referral traffic and other advertising accounts.

69. Grunin caused irreparable and incalculable harm and injuries to Facebook and, unless enjoined, his conduct will cause further irreparable and incalculable injury for which Facebook has no adequate remedy at law.

70. Facebook has been damaged in excess of $5,000 during a one-year period by Grunin's unauthorized access, access in excess of authorization, and abuse of its protected computers.

**THIRD CAUSE OF ACTION**
**CALIFORNIA COMPUTER DATA ACCESS AND FRAUD ACT**
**CAL. PEN. CODE § 502(c)**

71. Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

72. Facebook maintains proprietary computers, computer networks, and computer systems.

73. After Facebook revoked his permission to access Facebook and took technical measures to block his access, Grunin knowingly and without permission circumvented those technical measures and accessed Facebook's proprietary computers, computer systems, or computer networks by, for example, creating new Facebook accounts, obtaining advertising accounts under false pretenses, and continuing to run deceptive ads on Facebook.

74. Grunin knowingly and without permission used Facebook's proprietary computers, computer systems, or computer networks to devise and execute a scheme to defraud and deceive by impersonating agents of legitimate companies to obtain credit to run deceptive ads.

75. Grunin's actions have directly, proximately, and irreparably harmed Facebook by, among things, causing Facebook to place ads without payment and requiring Facebook to expend

resources to investigate Grunin's access and abuse of Facebook and to prevent such access or abuse from recurring. The extent and amount of injury and damage will be proven at trial.

76. Grunin caused irreparable and incalculable harm and injuries to Facebook and, unless enjoined, his conduct will cause further irreparable and incalculable injury for which Facebook has no adequate remedy at law.

**FOURTH CAUSE OF ACTION**
**FRAUD**

77. Facebook realleges and incorporates by reference, as if fully set forth herein, the allegations in the foregoing paragraphs.

78. Grunin obtained access to Facebook advertising accounts using false information with the intent to use the accounts to place noncompliant ads on Facebook and not pay Facebook for ads placed through those accounts.

79. Grunin also obtained access to Facebook advertising accounts using false information with the intent to sell the accounts to other persons who would use the accounts to place noncompliant ads on Facebook and not pay Facebook for ads placed through those accounts.

80. On at least two separate occasions, Grunin contacted Facebook posing as the agent of legitimate advertising entities in order to create advertising accounts that would be billed to the legitimate advertising entities. In furtherance of his fraud, Grunin provided false information, including financial documentation that Grunin knew was false.

81. Grunin made these representations to Faccbook with the intent to defraud and induce Facebook to provide him with advertising credit so that he could place deceptive ads that he would not have to pay for or so that he could sell access to the accounts to others who would also run noncompliant ads and not pay Facebook.

82. Acting in justifiable reliance upon Grunin's misrepresentations, Facebook provided him with advertising accounts and credit.

83. As a result of Facebook's reliance upon Grunin's intentionally false and deceptive conduct, Facebook provided more than $340,000 worth of advertising for which it has not been

paid. Facebook has also incurred significant economic damages attributable to the effort and resources used to identify Grunin's fraud, his multiple unauthorized accounts, and his deceptive ads. Grunin's intentionally false and deceptive conduct has tainted the Facebook experience for Facebook users, and Facebook has suffered and continues to suffer harm to its reputation and goodwill due to Grunin's actions.

84. Grunin caused irreparable and incalculable harm and injuries to Facebook and, unless enjoined, his conduct will cause further irreparable and incalculable injury for which Facebook has no adequate remedy at law.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Facebook asks for the following relief:

A. For a permanent injunction restraining Grunin, his agents, employees, and any person acting on behalf of or in concert with Grunin:

1. from accessing or using, or engaging third parties to access or use, Facebook's websites, services, platforms, and computer systems;
2. from engaging in any activity that violates Facebook's Terms; and
3. from engaging in any unlawful, misleading, or malicious activities directed at or relating to Facebook's websites, services, platforms, or computer systems.

B. An order requiring Grunin to account for and disgorge all profits derived by Grunin and his agents, employees, or persons acting on his behalf or in concert with him from his unfair and unlawful conduct, as permitted by law.

C. An order requiring Grunin to account for and to pay Facebook the value of any and all unpaid Facebook advertising charges that are attributable to Grunin's unfair and unlawful activities.

D. An award to Facebook of damages as permitted by law, including but not limited to compensatory, restitution, statutory, aggravated, and punitive damages, and in such amounts to be proven at trial.

E. For pre- and post-judgment interest as allowed by law.

F. For attorneys' fees and costs to the extent allowed by law.

Case3:14-cv-02323-WHA Document8 Filed05/29/14 Page22 of 32

## VIII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Facebook demands a trial by jury as to all issues so triable in this action.

DATED: May 20, 2014

**PERKINS COIE LLP**

By: s/Judith B. Jennison

Judith B. Jennison, Bar No. 165929
JJennison@perkinscoie.com

Attorneys for Plaintiff
Facebook, Inc.

LEGAL29196681.24

G.      For such other relief as this Court may deem just and proper.

DATED: May 20, 2014                          **PERKINS COIE LLP**

By: s/Judith B. Jennison

Judith B. Jennison, Bar No. 165929
JJennison@perkinscoie.com

Attorneys for Plaintiff
Facebook, Inc.

To: PERKINS COIE LLP

Declaration of Copyright Trademark. I am known by the name : ©Martin of the family: Grunin, Creditor, Trustee, Secure Party, Author of the Copyright Name Trademark Claim autograph (MARTIN GRUNIN™) or any derivative thereof HEREBY ATTEST THAT, I am competent and capable of handling my private and commercial affairs in my full capacity as Agent for the NAME MARTIN GRUNIN™ and will enforce with prejudice any Copyright Name Trademark Claim infringements. ALL RIGHTS RESERVED

CC: UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF CALIFORNIA
        SAN FRANCISCO DIVISION
CASE: 3:14-cv-02323-MEJ

**NOT-NEGOTIABLE**

Common Law Copyright Notice

27th May 2014

1. All rights are hereby reserved with regard to common law copyright of trade-names/trade-marks, as well as any and all derivatives and variations in the spelling of said trade-names/trade-marks belonging to ©Martin of the family: Grunin, which shall include [without limitation] all usernames/handles used in his online activities. Said names may neither be used, nor reproduced, neither in whole nor in part, nor in any manner whatsoever, without the prior, express, written consent and acknowledgment of ©Martin of the family: Grunin (hereinafter known as "Secured Party"), or by his implied consent in the event that he has published, distributed or broadcast any of his intellectual property for educational or entertainment purposes in any medium, which will be automatically revoked in the event of false and malicious statements being made or bad faith being demonstrated by any individual or juristic person, as well as the agent of said individual or juristic person, (hereinafter known as "the User"), who may not use any work associated with Secured Party's names for financial gain or benefit of any kind, under any circumstances, for any purposes whatsoever.

2. With the intent of being contractually bound, the User consents and agrees that upon service of, and/or Public Notice of these terms of use, they shall not display, recreate, reproduce, nor otherwise use in any manner, whether knowingly or unknowingly, any of the common law trade-names/trade-marks (and all versions and derivatives thereof) belonging to Secured Party, nor the artwork of any of his names, nor any derivative thereof, nor any variation in the spelling of any of his names (and all versions and derivatives thereof) without his prior, express, written consent and acknowledgment, unless otherwise expressly agreed between the User and Secured Party or stipulated by the terms and conditions of this notice.

3. For the avoidance of doubt, Secured Party neither grants, nor implies, nor otherwise gives consent for any unauthorized use of his names (and all variations and derivatives thereof) or intellectual property, and any such unauthorized use is strictly prohibited and the Unauthorized User will become liable for substantial charges.

4. Secured Party is not now, nor has ever been, an accommodation party, nor a surety, for any of his names, nor for any derivative thereof, nor for any variation in the spelling of said names, nor for any other juristic person, legal entity or individual, and is hereunder indemnified against any and all claims, legal actions, orders, warrants, judgments, demands, liabilities, losses, depositions, summonses, lawsuits, costs, fines, liens, levies, penalties, damages, interests and expenses whatsoever, both absolute and contingent, as are due and as might become due, now existing and as might hereafter arise, and as might be suffered by, imposed upon and incurred by any of his names for any and every reason, purpose and/or cause whatsoever, issued without Secured Party's express authorization or consent or material evidence demonstrating his direct involvement in any action for which his name(s) is/are alleged to be liable.

5. Common Law Copyright is also claimed by Secured Party over any and all means of identification of his person, defined as; all fingerprints, footprints, palm prints, thumbprints, hand-prints, toe-prints, RNA materials, DNA materials, blood and blood fractions, biopsies, surgically removed tissue, body parts, organs, hair, teeth, nails, semen, urine, faeces, excrement, other body fluids and matter of any kind, and breath samples, voice-print, retinal image, and the description thereof, and all other corporeal identification factors, and said factors physical counterparts, any and all body tissues of any kind, in any form, and all records and record numbers, including the results, recorded or otherwise, of all and any tests performed on any material relating to his names, and information pertaining thereto, as well as any visual image, photographic or electronic, notwithstanding any and all claims to the contrary.

6. Secured Party retains absolute control and mastery over the peaceful possession of his body, mind and mental faculties, to the extent that no medications, foods or otherwise may be administered to him in the absence of his freely given full formal consent without breaching the terms of this notice.
**Self-executing Security Agreement in Event of Unauthorized Use**
7. Under the terms of this notice, the User consents and agrees that any use of any of Secured Party's names (and all variations and derivatives thereof) or intellectual property [other than Authorized usage], constitutes unauthorized usage, which automatically contractually binds the User and renders this notice a Security Agreement, wherein the User becomes the Debtor of Secured Party and unreservedly agrees that:

(1) The User grants Secured Party a security interest in all its assets, land and personal property, and all of the User's interest in assets, land and personal property, in the sum of $1,000,000.00 (ONE MILLION US DOLLARS) per occurrence of the unauthorized use of any of the names belonging to Secured Party [the unauthorized use fee] , as well as for each and every occurrence of the use of any and all variations and derivatives thereof, as well as any variations in the spelling of those names, plus costs and the right to claim triple damages in the event of the User's failure to cure its default.
(2) The User authenticates this Security Agreement wherein the User is "Debtor" and ©Martin of the family: Grunin is "Secured Party", and wherein the User pledges all of its assets, land, consumer goods, farm products, inventory, equipment, money, investment property, commercial tort claims, letters of credit, letter-of-credit rights, chattel paper, negotiable and/or non negotiable instruments, deposit accounts, accounts, documents and general intangibles, as well as all its interests in all such foregoing property, now owned and hereafter acquired, now existing and hereafter arising, and wherever located, as collateral for securing the User's contractual obligation in favour of Secured Party, for its unauthorized use of Secured Party's name(s) and/or intellectual property.
(3) The User consents and agrees with Secured Party's filing of a Financing Statement in the UCC filing office, and/or with any county recorder or registrar, wherein the User is named as "Debtor" and the name used without authorization is named as "Secured Party", or any other name that Secured Party deems appropriate.
(4) The User consents and agrees that said Financing Statement described above in paragraph "(3)" is considered continuing, and further consents and agrees with Secured Party's filing of any continuation statement necessary for maintaining Secured Party's security interest in all of the User's property and interest in property, pledged as collateral in this Security Agreement and described above in paragraph "(2)," until the User's contractual obligation theretofore incurred has been fully satisfied or a waiver has been expressly granted in signed writing by Secured Party.
(5) The User consents and agrees with Secured Party's filing of any Financing Statement, as described above in paragraph's "(3)" and "(4)," as well as the filing of any Security Agreement, as described above in paragraph "(2)", in any legal proceeding deemed necessary by Secured Party in the enforcement of the terms of this notice.
(6) The User consents and agrees that any and all such filings described in paragraphs "(4)" and "(5)" above are not deemed to be unfair or unenforceable or unconscionable, and that the User will not claim that any such filing is false, frivolous or vexatious, on the basis that, in good faith, Secured Party hereunder agrees to waive any obligation that arises from an innocent error or omission that is subsequently rectified by the User within 14 days of service of notice of its copyright infringement.
(7) The User agrees that it is estopped from claiming that it has not been notified of the charges incurred for unauthorized use of Secured Party's copyrighted names and intellectual property and/or that it is not bound by the conditions contained herein, following service and/or public notice of such.
(8) The User appoints Secured Party as its Authorized Representative, effective upon the User being found to be in default of its contractual obligations, following service and/or public notice of these terms, as set forth under "Payment Terms" and "Default Terms" below, granting Secured Party full authorization and power to engage in certain actions for and on behalf of the User, including, but not limited by, authentication of a record on behalf of the User, as Secured Party to a Financing Statement, and the User further consents and agrees that this appointment of Secured Party as

Authorized Representative is effective upon User's default and irrevocable until redemption of its financial obligations to Secured Party.

User further consents and agrees with all of the following additional terms of this Self-executing Security Agreement in Event of Unauthorized Use.

**Payment Terms**

8. The User hereby consents and agrees that it shall pay Secured Party all unauthorized use fees in full within thirty (30) days of the date when NOTICE OF DEFAULT CHARGES is served by Secured Party, itemizing said charges and expressing the terms of payment.

**Default Terms**

9. In event of non-payment in full of all unauthorized use fees by the User within thirty (30) days of the date NOTICE OF DEFAULT CHARGES is served, the User shall be deemed in default, and agrees that:

a. Secured Party will be granted a legal charge over the User's property pledged as collateral by the User, as set forth above in paragraph 7(2).

b. Secured Party will be automatically appointed the User's Authorized Representative as set forth above in 7(8).

c. The User consents and agrees that Secured Party may take possession of, as well as otherwise dispose of, in any manner that Secured Party deems appropriate, including, but not limited by, sale at auction, at any time following the User's notice of its failure to cure its default, and without further notice or court proceedings, any and all of User's property and interest, described above in paragraph (2), in respect of this Self-executing Security Agreement in Event of Unauthorized Use, that Secured Party deems appropriate.

**Terms for Curing Default**

10. In the event of default, irrespective of any and all of the User's former property and interest in property, described above in paragraph (2), in the possession of, as well as disposed of by, Secured Party, the User may cure its default only by payment in full or by providing material evidence that demonstrates it breached the terms of this notice without being cognizant of the fact that it was doing so and without bad faith, in which case Secured Party may grant a waiver of the unpaid fees.

**Terms of Strict Foreclosure**

11. The User's non-payment in full of all unauthorized use fees within the thirty (30) day period for curing defaults authorizes Secured Party's immediate non-judicial strict foreclosure on any and all of the pledged property and interest in property, for which Secured Party will be granted a legal charge by the User until redemption.

**Miscellaneous**

12. Unauthorized use of "©Martin of the family: Grunin" (and/or any derivatives or variations thereof) and/or his internet usernames/handles incurs the same unauthorized use fees as those associated with his trade-names/trade-marks (and all derivatives and variations thereof) and intellectual property.

13. This Copyright Notice applies to any and all legal fictions of any and all natures and descriptions owned and/or used by Secured Party for any purpose whatsoever, and to all Users of those legal fictions and the intellectual property associated with the name(s) used without Secured Party' authorization.

Originally executed by ©Martin of the family: Grunin under seal on 27th May 2014

I have the right to amend this Common Law Copyright Notice, as and when necessary, and at my sole discretion.

This Copyright Notice includes any and all business names owned by MARTIN GRUNIN™ (and all derivatives thereof).

Autograph & Seal By: Secured Party Creditor____________________________

Dated: 27th May 2014

Witness Signature: ________________________

Dated: 27th May 2014

Original Signed

27 05 2014

MARTIN GRUNIN TM

Witness Signature: ____________________________

Dated: 27th May 2014

Witness Signature: ____________________________

WITHOUT RECOURSE NON-ASSUMPSIT

All Rights Reserved – Errors & Omissions Excepted

Copy

**USPS Tracking # 70131710000019741246**
**To: FACEBOOK, Inc.**
**Mark Zuckerberg et al.**

Declaration of Copyright Trademark. I am known by the name : ©Martin of the family: Grunin, Creditor, Trustee, Secure Party, Author of the Copyright Name Trademark Claim autograph (MARTIN GRUNIN™) or any derivative thereof HEREBY ATTEST THAT, I am competent and capable of handling my private and commercial affairs in my full capacity as Agent for the NAME MARTIN GRUNIN™ and will enforce with prejudice any Copyright Name Trademark Claim infringements. ALL RIGHTS RESERVED

**CC: PERKINS COIE LLP,**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**
**CASE: 3:14-cv-02323-MEJ**

P.O. Box 400201

Las Vegas [89140]

Nevada state

7013 1710 0000 1906 0118

UNITED STATES POSTAL SERVICE

1000

94102

U.S. POSTAGE PAID
LAS VEGAS, NV
89113
MAY 27, '14
AMOUNT

$5.33
00037752-03

RECEIVED

MAY 29 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Phillip Burton Federal Building Clerk of Court
450 Golden Gate Avenue
San Francisco, CA 94102

Non Domestic without U.S. Inc,

CERTIFIED MAIL™

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE