United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FACEBOOK, INC.,

    Plaintiff,

v.

MARTIN GRUNIN,

    Defendant.

No. C 14-02323 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DAMAGES, ATTORNEY'S FEES, AND COSTS**

## INTRODUCTION

A prior order entered default judgment in this action involving allegations of computer fraud and abuse. For the reasons stated herein, plaintiff is entitled to some but not all of the damages, fees, and costs sought in its motion.

## STATEMENT

Prior orders recounted the history of this action so it will not be repeated herein (Dkt. Nos. 33, 65, 76). In short, defendant Martin Grunin, an adult, failed to timely respond to the complaint. He instead filed a litany of documents refusing to participate in the proceeding and purporting to demand large sums of money from plaintiff Facebook, Inc. In one document filed with the Court, Grunin denied the authority of the district court, denied that "Martin Grunin is liable to or for any of the Federal Government statutes or codes," and denied residency in the United States (even though he now represents that he lives in New York) (Dkt. No. 35). In other documents in the record, he attempted to have a non-attorney file communications on his behalf. This was improper. He eventually retained counsel but an order denied his motion to set aside the default, after full briefing and oral argument. The order gave him one more chance to lift the

default (on the condition that he agree to pay Facebook's reasonable fees and expenses incurred from his inappropriate filings).

No renewed motion to lift the default was timely made. After the deadline elapsed, Facebook moved for default judgment and a permanent injunction. Grunin filed a statement of non-opposition. He then stated he wished to proceed *pro se* so his counsel withdrew. At oral argument, he made an untimely, unsuccessful oral request to lift the default. Default judgment and a permanent injunction followed (Dkt. Nos. 22, 76).

Now, only Facebook's motion for damages, attorney's fees, and costs remains. This order follows full briefing and a hearing. Grunin appeared in person and was heard.

## ANALYSIS

### 1. GRUNIN'S TARDY SUBMISSIONS.

The Clerk registered default in June 2014. Entry of default cut off Grunin's right to file an answer. Default judgment followed, wherein the order took the well-pled factual allegations of the complaint, except those relating to the amount of damages, as true. *TeleVideo System, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

Now, eight months after personal service of the complaint and twenty days after default judgment, Grunin states, "under penalty of perjury," that (Opp. 2–3, Dkt. No. 82):

> At no point in time did Martin Grunin purchase any advertisements on the accounts listed in exhibit C of [Facebook's] brief [Dkt. No. 79-3]. Martin Grunin, did not partake in submitting advertisements to the Facebook Ads platform, and further all [sic], he had zero financial benefit from the advertisements that were running on the accounts. Martin Grunin is not responsible for the unpaid advertisements of any of those accounts considering he never utilized those accounts.
>
> \*           \*           \*
>
> Facebook alleges that Martin Grunin is responsible for the unpaid invoice on the Thinkmodo and Marketing Drive ($116,067.41), and Imprezzio Marketing ($300,032.49) advertising account and credit line. Martin Grunin had absolutely zero advertising interaction with all three accounts. None of the advertisements on those accounts were submitted by Martin Grunin.

2

1   After Facebook filed a reply brief, Grunin filed another declaration (without obtaining leave to do
2   so) stating that he did not submit the advertisements referenced in Facebook's exhibits (Grunin
3   Sur-Reply Decl. ¶ 1, Dkt. No. 86).

4   This is too little, too late. Grunin had multiple opportunities to litigate this case but never did. After personal service of the complaint, he never filed an answer. He instead chose to lard the record with bogus filings. A prior order by the then-assigned judge (Judge Charles Breyer) warned Grunin that "sanctions, including default or dismissal, may be imposed for failure to comply with local rules" (Dkt. No. 33). Grunin nevertheless continued with his improper filings. After the Clerk registered default, his counsel moved to lift the default. After full briefing and oral argument, an order denied Grunin's motion. The order gave Grunin one more chance to move to lift the default. He made no motion by the deadline. *He then filed a statement of non-opposition to Facebook's motion for default judgment and a permanent injunction.* Default judgment and a permanent injunction followed.

14  The time to challenge specific allegations in the complaint has long passed. Grunin's belated attempt to argue "no responsibility" is not well-taken.

### 2. FACEBOOK'S MOTION.

17  An October 2014 notice reminded the parties to be reasonable and that sworn declarations explaining with specificity the damages flowing from (and only from) the well-pled allegations in the complaint are required to prove-up damages in a default judgment (Dkt. No. 61). The parties received another reminder at the January 2015 hearing.

21  Nevertheless, Facebook seeks an award of $1.339 million against Grunin. Specifically, $116,067.41 for fraud in connection with the Thinkmodo account, $300,032.49 for fraud in connection with the Imprezzio Marketing account, $8,516.50 for the computer fraud claims, $88,816.51 for the breach of contract claim, $500,000 in punitive damages, and $326,129.11 in attorney's fees and costs.

26  The complaint alleged the following. In 2011, Grunin posted a picture of a woman with a "sexually explicit and profane caption" on Facebook in violation of the terms of use. Facebook then disabled Grunin's account and sent him a cease-and-desist letter. Undeterred, Grunin

3

continued to access Facebook's site and services, including impersonating someone named "Kayla Stewart," who claimed to work for an entity (Marketing Drive) owned by Thinkmodo. Using the Stewart alias, Grunin sent emails to Facebook so that he could run ads without paying for them. By the time Facebook discovered the scheme, Grunin had run "approximately $40,000 worth" of ads (Comp. ¶¶ 21, 25, 31–38). In 2013, Grunin impersonated individuals named "Colan Neilson," "Felix Ward," and "Joy Hawkins," who all claimed to work for Imprezzio Marketing. To establish an advertising line of credit at Facebook, Grunin sent bank statements to Facebook which turned out to be false. Grunin then ran "at least $300,000 worth of ads" (Compl. ¶¶ 39–48, 80, 81). Facebook subsequently sent Grunin a second cease-and-desist letter and hand delivered a copy of that letter to Grunin's father. Facebook took "additional technical measures" to block and disable Grunin's access to Facebook. Facebook disabled more than seventy accounts linked to Grunin (Compl. ¶¶ 49, 50, 56).

In support of the instant motion, Mat Henley, the director of security at Facebook, submitted a declaration with exhibits. The exhibits showed the "Facebook Advertising Account ID," "Facebook Ad Invoice ID," "Invoiced Amount," and unpaid "Status" of the accounts used by Grunin (Henley Exhs. A–C). Henley stated that Facebook's security team had linked the emails sent by Stewart to Grunin, and that Grunin had charged $116,067.41 worth of ads to the Marketing Drive (Thinkmodo) credit line (Henley Decl. ¶¶ 4, 6–8). Facebook's security team had also linked the emails sent by Neilson to Grunin and had confirmed that Grunin had charged $300,032.49 worth of ads to the Imprezzio Marketing credit line. Grunin, not Imprezzio Marketing, had created the ads showing the "sexually explicit content" and had charged those ads to Imprezzio Marketing.

In terms of compensatory damages, this order finds entitlement to **$340,000**, which is the sum of Facebook's damages for the Thinkmodo and Imprezzio Marketing accounts flowing from the well-pled allegations in the complaint. This order rejects Facebook's request for $88,816.51 for the breach of contract claim because it was inadequately supported by well-pled allegations in the complaint. Facebook's brief only pointed to paragraphs 53 and 63 of the complaint which referred to the more than "$340,000 worth of ads" Grunin obtained in connection with the

4

1 Thinkmodo and Imprezzio Marketing accounts and Grunin's breach of Facebook's terms of use.
2 Although the complaint alleged that Facebook had disabled more than seventy accounts linked to
3 Grunin (the declaration now refers to ninety accounts), Facebook has not shown how the
4 $88,816.51 now claimed flows from the allegations specifically pled in the four-corners of the
5 complaint.

6 We must remember that only the well-pled allegations are deemed admitted in a default.
7 *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851, 854 (9th Cir. 2007). A plaintiff may not
8 enlarge on the substantive allegations via declarations in a prove-up hearing. Otherwise, the
9 defaulting party will have sandbagged, that is, a party might elect to default to a minor allegation
10 but not a major one. A prior order reminded the parties of this point. Facebook chose to stand by
11 its complaint and that is the complaint it must live with (Dkt. Nos. 61, 64).

12 Furthermore, no punitive damages are appropriate. Even Facebook concedes that "it is
13 hard to know how much will deter [Grunin] from doing it again" and that Facebook "does not
14 know how much money Grunin made as a result of his unlawful activities" (Br. 4). What we do
15 know is that a permanent injunction has been entered and Grunin himself has stated that he
16 "ceased any business with Facebook well before the lawsuit was filed" (Opp. 4). This order
17 rejects Facebook's grossly excessive, bald request for $500,000 in punitive damages.

18 In terms of attorney's fees and costs, it is a close call whether to outright deny Facebook's
19 inadequately supported demand for fees made pursuant to California Penal Code Section
20 502(e)(1) and Section 1030(a)(4) of the Computer Fraud and Abuse Act. Trimming back an
21 overbroad fee petition invites movants to overreach on the strategy that some lesser number will
22 be awarded. Here, Facebook's declaration falls short of proving-up the large sum sought.

23 Indeed, counsel only appended two one-page summary exhibits to their declaration.
24 No timesheets, no invoices, and no details specifically identifying the amount of time incurred on
25 each specific task were filed. Instead, counsel vaguely stated that they spent (1) $8,516.50 on
26 pre-litigation investigations; (2) $58,908.50 on drafting the complaint; (3) $60,149 on "case
27 management;" (4) $80,751.50 on Facebook's motion to strike Grunin's improper filings and
28 Grunin's motion to set aside the default; and (5) $118,032.50 on Facebook's motion for default

5

judgment and damages (Jennison Decl. ¶¶ 8, 10, 12, 14, 18).  One partner, three associates, and a paralegal worked on this matter.

This order finds entitlement to **$75,000** in fees, which is the sum of $5,000 for the complaint and case management, $10,000 for Facebook's motion to strike and Grunin's motion to set aside the default, and $60,000 for Facebook's motion for default judgment, damages, fees, and costs.  These reductions account for inefficiency, overstaffing, and inadequate documentation.

Facebook's request for $8,516.50 pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. 1030, *et seq*., is denied.  The statute requires Facebook to show a loss of at least $5,000 in a one-year period.  "Loss," as defined in Section 1030(e)(11), includes "the cost of responding to an offense, conducting a damage assessment, and restoring the data . . . to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  Facebook, however, stated that it incurred $8,516.50 in fees between *March 2011 and January 2014* (Jennison Decl. ¶¶ 6–8).  No evidence of a loss of more than $5,000 in a one-year period was provided.

Facebook's request for $8,287.61 in costs is rejected as well.  This order finds Facebook's documentation on costs entirely inadequate.  It does not suffice to put forth a summary table which includes, among other things, $15.23 for "Conference meals," $166.29 for "Travel expense meals," and $10 for a certificate of good standing.  Moreover, counsel provided no explanation for what the $47 spent on "Other" included.  No costs will be awarded.

## CONCLUSION

For the reasons stated herein, Facebook is hereby awarded **$340,000** in damages and **$75,000** in attorney's fees.  The Clerk shall **CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated:  February 19, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE